# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-CR-65-TCK |
| ) | |
| JUSTIN SPARKS, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Before the Court is the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") (Doc. 213), filed by Defendant Justin Sparks ("Justin"). Upon order of the Court, the United States filed a response (Doc. 223). Defendant filed a reply (Doc. 224), and the motion is now ripe.

## I.  Background

On April 4, 2007, Lorie Sparks ("Lorie") and Vincent Merrick ("Merrick") were named as co-defendants in a two-count Indictment. Lorie was charged with possessing with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vii) (Count 1), and Merrick was charged with conspiring to commit the offense charged in Count 1, in violation of 21 U.S.C. § 846 (Count 2). On May 11, 2007, a Superseding Indictment was filed naming Lorie's brother Justin as an additional co-conspirator as to Count 2 and setting forth objects, means and methods, and overt acts of the conspiracy.[1]

On July 11, 2007, Lorie pled guilty to Count 1 of the Superseding Indictment before United States District Judge Dale Cook. On August 10, 2007, a Second Superseding Indictment ("SSI") was

---

[1] Although a warrant was issued for Justin's arrest, he was not arrested until January 9, 2008 and did not make his initial appearance until February 5, 2008.

filed charging Justin and Merrick with conspiring together and with an unindicted co-conspirator to possess with intent to distribute 100 kilograms or more of marijuana. Specifically, the SSI alleges that, from April 2006 to February 2007, Justin paid an unindicted co-conspirator $3000.00 per trip to transport marijuana from various locations to Philadelphia, Pennsylvania, where it was to be sold. The SSI also contained a forfeiture allegation against Justin. Lorie testified at Merrick's trial, and, on October 2, 2007, a jury convicted Merrick.

On January 9, 2008, Justin was finally arrested in Harrisburg, Pennsylvania and made his initial appearance on the SSI.[2] Judge Cook continued Lorie's sentencing date so that she could assist in Justin's prosecution and set Justin's trial for April 7, 2008.[3] On February 4, 2008, Allen Smallwood ("Smallwood") entered his appearance as retained counsel for Justin. On April 7, 2008, Justin pled guilty to the conspiracy charge in the SSI, and Judge Cook set sentencing for July 2008.

On July 14, 2008, the case was reassigned to the undersigned judge, and the Court reset sentencing. On August 19, 2008, Sparks filed a *pro se* motion to withdraw his guilty plea and for new counsel, stating that his plea was made without proper advice or a full understanding of the consequences. The Court granted the motion for new counsel, and James Fatigante ("Fatigante") entered an appearance for Justin. On March 2, 2009, Fatigante filed an amended motion to withdraw the guilty plea, setting forth the legal test and arguing there existed a fair and just reason to permit withdrawal.

---

[2] According to testimony given during Justin's sentencing hearing, Justin gave police a false name upon his arrest. Police found $104,000.00, seven cell phones, and identification documents using false names in Justin's hotel room. (3/7/09, 3/11/09 Hr'g Tr. 143.)

[3] On January 16, 2008, Judge Cook sentenced Merrick to 63 months imprisonment. The Tenth Circuit affirmed Merrick's conviction on direct appeal in November 2008. *United States v. Merrick*, 299 F. App'x 820 (10th Cir. 2008).

2

On March 9, 2009, the Court held an evidentiary hearing on the motion to withdraw guilty plea, at which Smallwood and Justin testified. Smallwood testified that Justin had desired to proceed to trial and that Smallwood was prepared to begin trial on April 7, 2008. However, on the morning of trial, the United States disclosed that Melissa Oliveras ("Oliveras"), Defendant's ex-girlfriend, would be testifying against him and that her testimony would be damaging. Prior witness statements by Oliveras led Smallwood to believe she would not testify against Justin.[4] Smallwood believed Oliveras' new testimony significantly strengthened the United States' case, and he engaged in further discussions with Justin about a plea deal. Because the jury pool was waiting, Judge Cook gave Smallwood and Justin approximately one hour and fifteen minutes to decide whether to plead or proceed to trial. Smallwood recommended that Justin plead guilty, and Justin did so. Justin testified that, upon learning that Oliveras decided to testify against him, he became emotionally distraught, had a short time to decide whether to plead, felt coerced by Smallwood, and desired to withdraw his plea within just a few days after entering it. He testified that he was actually innocent and that he lied to Judge Cook when he admitted his guilt.

The Court denied the motion to withdraw and addressed each of the relevant factors under Tenth Circuit law. (3/9/09 & 3/11/09 Tr. 71-78.) The Court did not find Justin to be a credible witness. (*Id.* 71 (stating that the Court "questions defendant's credibility and the truthfulness of his testimony"); 77 ("Judge Cook would not ever take a plea from someone as emotionally distraught . . . as this defendant claims he was at the time. I don't believe it happened.").)

---

[4] Unbeknownst to Justin or Smallwood, Oliveras provided new testimony to prosecutors in Tulsa on March 30, 2008. Judge Cook permitted the United States to defer disclosure of Oliveras' new testimony until the morning of trial based on an ex parte motion filed by the United States describing Justin's threats to Oliveras' physical safety. (*See* Docs. 124,128 (Ex Parte Motions) & 127, 129 (Ex Parte Orders).)

The Court then proceeded to sentencing, during which Lorie and Oliveras testified on behalf of the United States. Lorie testified about multiple trips she made to pick up cocaine and marijuana for Justin. During one such trip, Lorie was stopped and arrested in Oklahoma. Unbeknownst to her brother, she began cooperating with Oklahoma law enforcement agents. She made recorded phone calls to Justin and eventually made a controlled delivery to Justin's residence in Philadelphia. Upon search of Justin's residence, police located two firearms in a bedroom and scales in the basement.[5] Oliveras testified that she saw Justin package marijuana at their house and accompanied Justin on several trips where they transported drugs. She continued to have contact with Justin after he became a fugitive. She testified that he paid her $5,000.00 to keep quiet regarding his whereabouts and drug activity, that he threatened to kill her or her family if she told police his whereabouts, and that he placed a gun to her head.[6]

The Court continued the proceedings until March 11, 2009, when the United States called its third witness, James Wilcoxen ("Wilcoxen"), a Tulsa Police Department officer assigned to drug enforcement. Wilcoxen testified regarding credit card transactions and phone records that corroborated Lorie's testimony regarding the dates of drug purchases. Wilcoxen also testified that, on March 30, 2008, he conducted an interview of Oliveras that corroborated Lorie's testimony. Wilcoxen admitted that Oliveras' witness statement on March 30, 2008 conflicted with her prior

---

[5] When this controlled delivery took place, Justin's daughter and Merrick were present at the house, but Justin was not.

[6] Oliveras stated that she feared for her life based on her decision to testify against Justin. While Justin was a fugitive, a United States Marshal visited Oliveras at work and offered her a reward for helping them locate Justin. However, Oliveras did not assist the United States in finding Justin and did not receive any reward. She only began cooperating with authorities sometime after Justin's arrest in January 2008.

4

denial that Justin was involved with drugs or weapons. Wilcoxen also testified regarding drug quantities.

The Court made the following findings for purposes of sentencing: (1) Justin and the co-conspirators possessed with intent to distribute at least 877 kilograms of marijuana; (2) Justin was a leader/organizer of a multistate cocaine and marijuana distribution ring with five or more participants; (3) Justin attempted to obstruct justice by paying and threatening Oliveras; (4) a firearm enhancement was not proper because the firerarms were licensed and not found in close enough proximity to the drugs; and (5) Justin was not entitled to any acceptance of responsibility points because he obstructed justice by threatening Oliveras, falsely claimed his change of plea was involuntary, and denied relevant conduct. The Court sentenced Justin to 210 months of imprisonment, the middle of the guidelines range, and five years of supervised release. The Court then conducted Lorie's sentencing proceeding. The Court granted the United States' motion for downward departure based on her cooperation and sentenced her to zero months imprisonment and five years of supervised release.

Justin filed a direct appeal, arguing that this Court had erred in denying his motion to withdraw his guilty plea and challenging various aspects of his sentence. On November 12, 2009, the Tenth Circuit affirmed both the Court's denial of his motion to withdraw guilty plea and sentence. *See United States v. Sparks*, 353 F. App'x 121, 126-28 (10th Cir. 2009) ("The district court carefully and meticulously went through each *Gordon* factor, explaining why, considered together, they compelled the denial of Mr. Sparks' motion."). Justin did not file a motion for post-conviction relief within one year after his conviction became final, *see* 28 U.S.C. § 2255(f)(1), and this is his first habeas motion.

**II.    § 2255 Motion**

On May 5, 2014, Justin filed the currently pending § 2255 Motion, stating that he "just learned of the information that forms the basis of the petition" and requesting that the Court hold an evidentiary hearing and ultimately vacate his conviction. (*See* § 2255 Motion 12.) Justin claims that, on February 22, 2014, his adult daughter Selena Munoz ("Munoz") told him that Oliveras had an ongoing sexual relationship with a member of Justin's prosecution team at the time Justin pled guilty. Munoz submitted the following declaration in support of the § 2255 Motion:

1. I am the daughter of Justin Sparks.
2. I have had conversation [sic] with Justin's sister, my aunt Lorie Silvestre regarding my father's former live-in girlfriend Melissa Oliveras.
3. Lorie has advised me that she believes Melissa Oliveras has had sexual contact with a member of the prosecution team during my father's trial and possibly before. A few times Lorie Silvestre had conversations with me in an automobile that she was certain that Melissa Oliveras had sexual contact with a member of the prosecution team during my father's trial and possibly beforehand of my father's trial.
4. Lorie Silvestre informed me that the relationship took place during my father's trial. Lorie Silvestre gave me uncertainty that it could have happened before hand, but Lorie Silvestre gave strong knowledge as if she knew that the sexual relationship occurred before my father's trial was suppose [sic] to begin.

(Munoz Decl., Ex. A to § 2255 Motion.)

Based on this new information, Justin raises three grounds for post-conviction relief: (1) that the "prosecution team engaged in outrageous misconduct by both engaging in a sexual relationship with the lead witness Melissa Oliveras causing her to perjur[e] herself" and implicate Justin ("prosecutorial misconduct"); (2) that the United States "concealed said relationship and failed to disclose said *Brady* information to the defense ("*Brady* violation"); and (3) that both Smallwood and Fatigante failed to adequately investigate what caused Oliveras' "change of heart," resulting in ineffective assistance of counsel ("ineffective assistance").

6

In response, the United States argues that Munoz's statement is uncorroborated hearsay and should be disregarded. The United States also submitted its own counter-evidence in the form of three declarations. First, the United States submitted the following declaration of Oliveras:

> 1. I am the former girlfriend of Justin Sparks. I agreed to testify against Justin in the criminal case filed against him in the Northern District of Oklahoma.
> 2. I have been told that Justin's daughter, Selena Munoz, has alleged that I was having a sexual relationship with a member of the prosecution team in the case against Justin. This is untrue. I never had sexual contact, a sexual relationship, or any type of personal relationship, with anyone involved in Justin's prosecution.
> 3. During the time I was preparing to testify against Justin, I was dating Ashley David Hoggard, a Philadelphia police officer. Ashley was not involved in the case against Justin in any way. I met him when he was a customer at the CVS pharmacy where I was working at the time. Ashley and I dated from approximately 2008 to 2009.
> 4. When Justin's sister Lorie and I were in Tulsa to testify against Justin, I told her I was dating a Philadelphia police officer. I never told her he was involved in Justin's case.
> 5. During Justin's case I was initially reluctant to testify against him because I was afraid of him and his organization. I am still terrified of Justin, and have moved away from Philadelphia so he cannot find me.
> 6. Even though Justin is in jail, my father has received frequent threatening phone calls and letters in Justin's handwriting. When he began receiving these threats, I contacted Gayla Stewart, the Victim-Witness Coordinator in the United States Attorney's Office.
> 7. Since Justin went to jail, I've been able to start a new life for myself in a new place, and have tried to put all this behind me. It feels like a recurring nightmare. I am still afraid that Justin will find out where I am.

(Resp. to § 2255 Mot. at Ex. 1.) Second, the United States submitted the declaration of Ashley David Hoggard ("Hoggard"), which provides:

> 1. I have been an officer with the Philadelphia Police Department since 2006. In my role as a police officer, I was never involved in any respect in any investigation relating to Justin Sparks.
> 2. Beginning in mid-2008, I dated Melissa Oliveras for eight or nine months. Melissa and I met at the CVS where she was working at the time. While we were dating, I was aware she was preparing to testify against an ex-boyfriend in Oklahoma, but other than what Melissa told me, I knew nothing about the case. Melissa and I stopped dating in 2009 and I have not seen her since 2009.

7

(*Id.* at Ex. 2.)  Finally, the United States submitted the declaration of Gayla Stewart, a Victim/Witness Coordinator in the United States Attorney's Office for the Northern District of Oklahoma:

> 1. I am a Victim/Witness Coordinator in the United States Attorney's Office for the Northern District of Oklahoma.
> 2. I assisted with arranging transportation and housing for witnesses, including Melissa Oliveras, in *United States v. Justin Sparks*, Case No. 07-CR-65-TCK.
> 3. After Mr. Sparks pleaded guilty and went to jail, Ms. Oliveras contacted me because her father was receiving threatening phone calls and letters from Mr. Sparks. Ms. Oliveras continues to be frightened of Mr. Sparks, and I understand that she has relocated to avoid contact with Mr. Sparks and his connections.

(*Id.* at Ex. 3.)

### A. Timeliness

By proceeding to merits-based arguments, the United States appears to concede that the motion was timely under 28 U.S.C. § 2255(f)(4), which provides that a motion is timely if filed within one year from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Facts set forth in Munoz's declaration could not have been discovered by Defendant through due diligence, particularly given the estranged relationship between he and Lorie. Therefore, the § 2255 motion is timely.

### B. Merits

The Court concludes that all three claims for relief fail for two reasons. First, the claims for relief are premised on a hearsay affidavit. Munoz's affidavit and any testimony she might offer at an evidentiary hearing constitute inadmissible hearsay because she is simply stating what Lorie told her. Munoz has no direct knowledge of Oliveras' relationship and is simply recounting what she heard from Lorie. Justin also has no direct knowledge of the relationship and admits that he only

8

learned of the relationship through Munoz. Thus, Munoz's proferred testimony that Oliveras had an ongoing sexual relationship with a member of the prosecution team when Justin entered his guilty plea will be disregarded by the Court. *See Neill v. Gibson*, 278 F.3d 1044, 1056 (10th Cir. 2001) (holding that district courts do not abuse discretion by refusing to consider hearsay affidavits); *United States v. Lowe*, 5 F. App'x 832, 837 n.6 (10th Cir. 2001) (advising defendant that hearsay affidavits may be disregarded in a § 2255 motion). Without the affidavit, there is no factual basis for Justin's claims for habeas relief.

Second, assuming the Court were to consider Munoz's declaration and/or permit her to testify during an evidentiary hearing, the United States has presented evidence removing any possibility that Justin's prosecution was somehow tainted by any relationship Oliveras had during the relevant time frame. In her declaration, Oliveras admits that she told Lorie about a boyfriend she had at the time of Justin's guilty plea and that he was a police officer. However, she clarifies that such boyfriend, whom she identifies as Hoggard, was a Philadelphia police officer who was not involved in the prosecution or investigation of Justin's case in any manner. In his declaration, Hoggard himself denies that he was involved in Justin's investigation or knew anything about Justin's criminal case, other than what Oliveras told him. Therefore, the two people that were actually in the relationship deny that Hoggard was involved in Justin's prosecution, either as an investigating officer or in any other capacity. Munoz's conclusion that Oliveras had a relationship with "a member of the prosecution team" is entirely discredited by the two people with firsthand knowledge of the relationship that Oliveras described to Lorie, which Lorie then described to Munoz.[7] Had the United

---

[7] If and to the extent Munoz contends that Lorie was talking about some other law enforcement official or prosecuting attorney that Oliveras had a relationship with during this same timeframe, such testimony is uncorroborated and contradicted by the evidence before the Court.

9

States failed to identify the boyfriend that Oliveras had described to Lorie or failed to obtain affidavits from Oliveras and Hoggard, Munoz's testimony (assuming it was admissible) may have necessitated an evidentiary hearing. However, the United States' evidence demonstrates that there is no real question of fact and no need to weigh the credibility of witnesses. *See United States v. Gonzalez*, 596 F.3d 1228, 1244 (10th Cir. 2010) (finding "no relevant, disputed issues of fact that needed to be resolved, and in turn no need for an evidentiary hearing").[8]

In sum, the Court rejects the factual foundation of Justin's motion because it is inadmissible hearsay and because it is wholly discredited by the United States' evidence. All three of Justin's grounds for habeas relief – prosecutorial misconduct, *Brady* violation, and ineffective assistance – are premised on the same facts. The Court therefore denies the § 2255 Motion in its entirety and declines to conduct an evidentiary hearing.

### III. Certificate of Appealability

Rule 11 of the *Rules Governing Section 2255 Cases in the United States District Courts* instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a

---

[8] Justin's threatening and intimidating behavior toward Oliveras and members of her family also counsels against conducting an evidentiary hearing. This Court has already heard Oliveras' testimony, found her to be a credible witness, and found that Justin had indeed threatened her. Oliveras relocated but continues to fear Justin, and she reported further threatening behavior by Justin after his imprisonment. Avoiding a hearing in which Oliveras and/or Hoggard are forced to testify against Justin is in the interest of justice and witness protection.

court could resolve the issues differently, or that the questions deserve further proceedings. *Slack v. McDaniel*, 529 U.S. 473 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). In addition, when the Court's ruling is based on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 484.

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Court's ruling is debatable or incorrect. The record is devoid of any authority suggesting that the Tenth Circuit would resolve the issues in this case differently. A certificate of appealability shall be denied.

**IV.    Conclusion**

Defendant's § 2255 Motion (Doc. 213) is DENIED, and a certificate of appealability is denied. A separate judgment shall be entered.

DATED this 7th day of May, 2015.

*/s/ Terence Kern*
**TERENCE KERN**
**United States District Judge**